UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIABOLIC VIDEO PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> DOES 1-2099, ) <br> ) <br> Defendants. ) <br> ) <br> ) | **Case No.: 10-CV-5865-PSG** <br><br> **AMENDED ORDER GRANTING-IN-PART MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(F) CONFERENCE** <br><br> **(Re: Docket No. 8)** |

On December 23, 2010, Plaintiff Diabolic Video Productions, Inc. ("Diabolic") filed this lawsuit for copyright infringement against 2,099 separate "Doe" Defendants. Ordinarily, Fed. R. Civ. P. 26(d)(1) precludes discovery before the conference required under the Fed. R. Civ. P. 26(f). Pursuant to the court's scheduling order, the parties were to have met as required by Fed. R. Civ. P. 26(f) no later than March 1, 2011. That meeting has not taken place, and Diabolic now moves for leave to take discovery in advance of the meeting required by Fed. R. Civ. P. 26(f). Diabolic specifically seeks leave to serve subpoenas on several enumerated ISPs to obtain the true identities of Doe Defendants for purpose of service in accordance with Fed. R. Civ. P. 4.

"[I]n rare cases, courts have made exceptions, permitting limited discovery to ensue after the filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."[1] After a careful review of the record and precedent in this Circuit,

---

[1] *Columbia Ins. Co. v. SeesCandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).

1

Case No.: 10-5865
ORDER

District and elsewhere, this court finds only a limited basis for the exceptional relief Diabolic seeks. Diabolic's motion therefore is GRANTED, but only IN PART, for the reasons explained below.

The court further orders that Does 2 through 2,099 are SEVERED from this action, and the claims against Does 2 through 2,099 are ordered reassigned, as explained below.

## I.   BACKGROUND

Diabolic alleges it is a motion production company whose copyright titles include "Tampa Swingers Party," a work registered in United States Copyright Office under Registration Number PAU 3-472-891. Diabolic alleges that its copyrights are being infringed in the same manner by each of the 2,099 unnamed defendants. According to Diabolic, each of the defendants are illegally downloading and distributing the films using an online media distribution network often referred to as a "peer-to-peer" or "P2P" network.

Diabolic's complaint does not identify any particular file-sharing protocol used by the alleged network. But in a declaration submitted by Jon Nicolini in support of Diabolic's motion, Mr. Nicolini references the well-known protocol "BitTorrent." The BitTorrent protocol is a decentralized method of distributing data. Since its release approximately 10 years ago, BitTorrent has allowed users to share files anonymously with other users. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data amount themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."

The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client,

2

Case No.: 10-5865
ORDER

which automatically attempts to connect to the tracker listed in the torrent file.  Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm.  When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects form the swarm or the BitTorrent client otherwise does the same.

According to Diabolic, efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature.  Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts.  Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures.  To overcome these obstacles, Diabolic contracted with the anti-piracy firm Copyright Enforcement Group, LLC ("CEG"), who are able to use proprietary technology to identify the particular BitTorrent users sharing their copyrighted works.  What CEG specifically provides as its service are the alleged infringers' Internet Protocol ("IP") addresses together with the date and time the alleged infringement took place.  While these IP addresses provide a form of identification, "[t]raditionally, the default requirement in federal court is that the plaintiff must be able to identify the defendant sufficiently that a summons can be served on the defendant.  This requires that the plaintiff be able to ascertain the defendant's name and address."[2]

Because an IP address by itself is insufficient to perform this task, Diabolic seeks leave to subpoena various Internet Service Providers ("ISP") associated with the IP addresses CEG has secured.  The proposed subpoena would compel production of the names, addresses, email addresses, phone numbers, and Media Access Control numbers associated with each IP address alleged to be linked to infringing activity.

---

[2] *Columbia Ins. Co.*, 185 F.R.D. at 577 (citing Fed. R. Civ. P. 4).

## II. DISCUSSION

In the Ninth Circuit, exceptions to the general rule against expedited discovery are disfavored.[3] But a district court always has jurisdiction to determine facts relevant to whether or not it has personal jurisdiction.[4] As a result, "where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear" that one of two conditions applies.[5] The first is where discovery would not uncover the identities sought.[6] The second is where the claim against the defendant could be dismissed.[7] These conditions are imposed because, as Judge Jensen observed over a decade ago, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discovery their identity."[8]

As to the first *Gillespie* condition, whether or not the individuals identified are ultimately liable under Diabolic's theory of infringement, the court is satisfied that the discovery sought here would uncover the identities that Diabolic seeks. The Nicolini Declaration explains that CEG has previously sent notices authorized under the Digital Millenium Copyright Act to each ISP. Each notice included the identity of an accused file and the IP address of the computer having that file

---

[3] *See Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)); *see also Gomez v. Serv. Employees Int'l Local 87*, No. C 10-01888 RS, 2010 WL 4704407, at *3 (N.D. Cal. Nov. 12, 2010).

[4] *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

[5] *Gillespie*, 629 F.2d at 642; *see also Columbia Ins. Co.*, 185 F.R.D. at 573 ("With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from [ISP] to ISP, with little or no hope of actually discovering the identity of the tortfeasor. In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an forum in which they may seek redress for grievances.").

[6] *See Gillespie*, 629 F.2d at 642.

[7] *See id.* at 642.

[8] *Columbia Ins. Co.*, 185 F.R.D. at 578.

available for download along with the timestamp associated with it. In the notice, CEG included its contact information and requested that the ISP forward the notice to the ISP's subscriber associated with the IP address. The IP addresses included in Diabolic's proposed subpoenas are those for whom CEG has received no response or settlement agreement. While other courts have rightly noted that the relationship between accused activity linked to an IP address and subscriber information associated with that IP address is imperfect at best,[9] this imperfection does not make it "clear," as our Circuit requires,[10] that the discovery sought would fail in uncovering the identity of individuals responsible for that activity.

The court is not satisfied, however, as to the second *Gillepsie* condition, because as to all but a single Doe, Diabolic's complaint would, and should, be dismissed for misjoinder. While "joinder of claims, parties and remedy is strongly encouraged,"[11] Fed. R. Civ. P. 20 sets forth specific standards for permissive joinder. Under Rule 20, parties may be joined in a single lawsuit where the claims against them arise from a single transaction or a series of closely related transactions. If misjoinder is apparent, Fed. R. Civ. P. 21 is clear that misjoinder "is not a ground for dismissing an action." But while an action may not dismissed for misjoinder, a court may on just terms drop a party at any time.[12] Indeed, this court has long dismissed parties based on misjoinder,[13] and continues to do so up to the present day, absent some prejudice to the plaintiff such as the running of the statute of limitations.[14]

---

[9] *See VPR Internationale v. Does 1-1017*, Case 2:11-cv-02068-HAB-DGB (C.D. Ill. Apr. 29, 2011), Docket No. 15 at 2.

[10] *Gillespie*, 629 F.2d at 642.

[11] *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

[12] *See* Fed. R. Civ. P. 21.

[13] *See United States ex rel. North Santiam Watershed Council v. Kinross Gold USA, Inc.,* No. C 96-3673 THE, 1998 WL 118176, at *2 (N.D. Cal. Mar. 9, 1998).

[14] *See, e.g. IO Group, Inc. v. Does 1-19*, No. C. 10-03851 SI, 2010 WL 5071605, at * 3-4 (N.D. Cal. Dec. 7, 2010), *IO Group, Inc. v. Does 1-435*, No. C. 10-04382 SI, 2011 WL 1219290, at * 2 (N.D. Cal. Jan. 10, 2011).

Here, the complaint alleges that 2,099 different defendants reproduced its copyrighted film on at least forty-nine different days. The complaint further alleges that all 2,099 defendants have acted in cooperation with one another "by agreeing to provide, and actually providing, on a P2P network, an infringing reproduction of at least substantial portions of Diabolic's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works."[15] Citing Mr. Nicolini's identification of a common hash, or alphanumeric representation, among all Defendants' content files, Diabolic contends that Defendants joined in a common "swarm," or upload and download of the copyrighted work, that qualifies as the single transaction or series of closely-related transactions recognized under Rule 20. This court and others, however, have repeatedly held that the mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards for joinder set forth in Rule 20.[16] Apart from its lone allegation that Defendants all used the same P2P network to reproduce and distribute Diabolic's copyrighted work, Diabolic offers no allegations whatsoever to support its theory of a single or closely-related transactional theory.

To be fair, other courts have deferred the question of joinder and severance until after discovery has been authorized and a motion to quash filed.[17] But in each of these cases, the court

---

[15] 12/23/10 Compl. (Docket No. 1) ¶ 11.

[16] *See, e.g., BMG Music v. Does,* No. C 06-01579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. Jul. 31, 2006) (finding improper joinder of four Doe defendants where the complaint alleged that each defendant used the same ISP to engage in distinct acts of infringement on separate dates at separate times); *Twentieth Century Fox Film Corp. v. Does* 1-12, No. C 04-04862, Docket No. 12 (N.D. Cal. Nov. 16, 2004) (severing twelve Doe defendants in a copyright infringement case where although defendants used the same ISP to allegedly infringe motion picture recordings); *Laface Records, LLC v. Does 1-38,* No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008) (ordering the severance of claims against thirty-eight defendants where plaintiff alleged each defendant used the same ISP as well as the same peer-to-peer network to commit the alleged copyright infringement); *Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (recommending *sua sponte* severance of multiple defendants in action where only connection between defendants was allegation that they used same ISP and P2P network to conduct copyright infringement); *see also*; *cf. In the Matter of DIRECTV, INC.* 2004 U.S. Dist. LEXIS 24263, No. C 02-5912 (N.D. Cal. Jul. 26, 2004) (severing and dismissing hundreds of defendants in a case alleging that defendants purchased and used modified access cards and other pirate access devices to permit view plaintiff's programming without authorization).

[17] *See, e.g. Call of the Wild Movie, LLC v. Does 1-1.062*, Civ. Action Nos. 10-455 (BAH), 10-569 (BAH), 10-1520 (BAH), 2011 WL 996786, at *3 (D.D.C. Mar. 22, 2011) (collecting cases).

appears to have accepted the argument that a file-sharing protocol like BitTorrent "makes every downloader also an uploader of the illegally transferred file(s)."[18] But neither this case law, nor Diabolic, explains how or why the technical architecture of BitTorrent is any different from those of the file-sharing protocols considered in *Leface Records, LLC*,[19] *Interscope Records*,[20] *BMG Music*,[21] or *Twentieth Century Fox Film Corp*.[22] In each of those cases, the peer-to-peer nature of the protocol was insufficient to justify joinder of dozens of otherwise unrelated defendants in a single action. Here, Diabolic proposes to join not merely dozens, but thousands, of defendants in a single action. While the court is limited in its technical understanding by the *ex parte* nature of Diabolic's motion, it can take notice of the fact that the protocols at issues in those earlier cases, like the BitTorrent protocol here, were of precisely the same peer-to-peer architecture. Diabolic's motion therefore is GRANTED, but only as to Doe 1 and as follows.

IT IS HEREBY ORDERED that Diabolic is allowed to serve immediate discovery on Doe 1's ISP listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks information sufficient to identify Doe 1, including the name, addresses, telephone numbers, and email addresses of Doe 1. Diabolic's counsel shall issue its subpoena in substantially the same form as the example attached as Exhibit 1 to Diabolic's Ex Parte Application for Leave to Take Limited Discovery Prior to a Rule 26 Conference, and shall include a copy of this order.

IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon it to serve Doe 1 with a copy of the subpoena and a copy of this order. The ISP may serve Doe 1 using any reasonable means, including written notice sent to Doe 1's last known address, transmitted either by first-class mail or via overnight service. The ISP and Doe 1 each shall have 30 days from the date of service to file any motions in this court contesting the subpoena (including

---

[18] *Id*. at *5.

[19] No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008).

[20] No. 6:04-CV-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004).

[21] No. 06-01579, 2006 U.S. Dist. LEXIS 53237, (Patel, J.) (N.D. Cal. July 31, 2006).

[22] No. C 04-04862, Docket No. 12 (N.D. Cal. Nov.16, 2004).

a motion to quash or modify the subpoena). If that 30-day period lapses without Doe 1 or the ISP contesting the subpoena, the ISP shall have 10 days to produce to Diabolic the information responsive to the subpoena with respect to Doe 1.

IT IS FURTHER ORDERED that the ISP shall not assess any charge to Diabolic in advance of providing the information requested in the subpoena, and that the ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost reports that serve as a basis for such billing summary and any costs claimed by the ISP.

IT IS FURTHER ORDERED that the ISP shall preserve all subpoenaed information pending the ISP's delivering such information to Diabolic or the final resolution of a timely filed and granted motion to quash the subpoena with respect to such information.

IT IS FURTHER ORDERED that any information disclosed to Diabolic in response to a subpoena may be used by Diabolic solely for the purpose of protecting its rights under the Copyright Act, 17 U.S.C. § 101 et seq.

IT IS FURTHER ORDERED that Does 2 through 2099 are SEVERED from this action and that the claims against Does 2 through 2,099 be reassigned to an Article III judge. In view of the misjoinder described above, the undersigned respectfully recommends that the claims against Does 2 through 2,099 be dismissed without prejudice. The undersigned further recommends that if Diabolic can refile separate complaints against Does 2 through 2,099 within 20 days of this order, such actions should be deemed a continuation of the original action for purposes of the statute of limitations.[23]

**IT IS SO ORDERED.**

Dated: May 31, 2011

PAUL S. GREWAL
United States Magistrate Judge

---

[23] This court is ordering reassignment to an Article III judge because, absent the consent of all parties, a Magistrate Judge does not have authority to make case-dispositive rulings. *See, e.g., Tripati v. Rison*, 847 F.2d 548, 549 (9th Cir. 1988).